```
              UNITED STATES DISTRICT COURT
                DISTRICT OF MASSACHUSETTS


DA'SHAWN L. WILLIAMS,
     Plaintiff,


     V.                              CIVIL ACTION NO.
                                     19-11807-IT

THOMAS A. TURCO, et al.,
     Defendants.
```

### REPORT AND RECOMMENDATION RE:
### CLINICAL DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS
### (DOCKET ENTRY # 81)

### March 2, 2022

**BOWLER, U.S.M.J.**

Defendants Emily Holmes, LICSW ("Holmes"), Director of Health Services at the Old Colony Correctional Center in Bridgewater, Massachusetts ("OCCC"); Karen Collins, LICSW ("Collins"), Director of Mental Health at OCCC; and Chelsea Pilings, LICSW ("Pilings"), Assistant Director of Mental Health at OCCC, ("the clinical defendants") move for judgment on the pleadings on the remaining claims against them under Fed. R. Civ. P. 12(c) ("Rule 12(c)").  (Docket Entry # 81).  These claims are: (1) an equal protection claim under 42 U.S.C. § 1983 ("section 1983") in Count One against the clinical defendants; (2) a conspiracy claim under section 1983 to violate plaintiff

Da'Shawn L. Williams' Fifth Amendment rights in Count Four against the clinical defendants; and (3) a substantive due process claim in Count One under section 1983 and a substantive due process claim in Count Six under the Massachusetts Declaration of Rights, Mass. Const. art. 1, pt. 1, against Collins and Pilings.  After affording plaintiff Da'Shawn L. Williams ("plaintiff") two extensions of time (Docket Entry ## 84, 85), he did not file an opposition to the motion.

    The pro se complaint alleges that plaintiff, "a mentally ill prisoner" typically housed in the residential treatment unit at OCCC, reached out to mental health staff after hearing news of his grandmother's passing.  Upon speaking with mental health staff, plaintiff "was placed on a suicide watch" in the health services unit.  (Docket Entry # 1, ¶¶ 2, 27).  Shortly thereafter, he was transferred temporarily to the Massachusetts Treatment Center ("MTC"), where he was sexually harassed. (Docket Entry # 1, ¶¶ 28-32, 37-38, 45-49).  MTC mental health staff advised plaintiff he would need to discontinue the mental health watch to return to OCCC.  (Docket Entry # 1, ¶ 48). Plaintiff complied and returned to OCCC the following day. (Docket Entry # 1, ¶¶ 28, 49).  When he returned to OCCC, he experienced verbal harassment from inmates and officers, an inmate assault, and staff misconduct regarding the grievances he filed about the transfer.  (Docket Entry # 1).

2

PROCEDURAL BACKGROUND

The clinical defendants previously moved to dismiss the complaint under Fed. R. Civ. P. 12(b)(6) ("Rule 12(b)(6)") or, in the alternative, for summary judgment. (Docket Entry # 34). The DOC defendants[1] separately moved to dismiss the complaint under Rule 12(b)(6). (Docket Entry # 44). In a Report and Recommendation, this court recommended denying the substantive due process claims in Counts One and Six against Collins and Pilings under Rule 12(b)(6) and otherwise allowing the motion, except for the claims the clinical defendants did not address. (Docket Entry # 74, pp. 8, 83-84). The unaddressed claims are the section 1983 conspiracy claim in Count Four and the equal protection claim in Count One. (Docket Entry # 74, p. 84, n.42). This court recommended allowing the DOC defendants' motion to dismiss the section 1983 conspiracy claim and the section 1983 equal protection claim under the Rule 12(b)(6). (Docket Entry # 74, pp. 59-61, 71-73, 84) (Docket Entry # 44).

---

[1] The DOC defendants are as follows: the Massachusetts Department of Corrections; Carol A. Mici, Commissioner of the DOC; Suzanne Thibault ("Thibault"), Superintendent of OCCC; Lisa Mitchell, Superintendent of MTC; Victor Correia, Director of Security at OCCC; Jeffrey Souza, a captain at OCCC; John Schofield, a lieutenant and special investigator at OCCC; Mark Fogeran, a sergeant and the Internal Grievance Coordinator at OCCC during the relevant time period; Dimitros Mantalos, an OCCC correctional officer; and Tyson Gonzalez, also an OCCC correctional officer.

The clinical defendants filed objections to the Report and Recommendation challenging this court's construction of the complaint as including the conspiracy and equal protection claims, which the district judge rejected. (Docket Entry # 78, p. 2). They also sought to dismiss these claims as well as the substantive due process claims against Collins and Pilings based upon this court's findings to dismiss these same claims against various DOC defendants. (Docket Entry # 78, pp. 2-3). The district judge denied without prejudice the clinical defendants' request to dismiss the substantive due process claims against Collins and Pilings as well as the section 1983 equal protection and conspiracy claims. (Docket Entry # 78, pp. 4-5). In so doing, the district judge explained that "the Clinical Defendants' arguments must be asserted in the first instance by motion (such as a motion for judgment on the pleading) rather than by objection." (Docket Entry # 78, p. 3). Thereafter, the clinical defendants filed the present motion.

## STANDARD OF REVIEW

A Rule 12(c) motion for judgment on the pleadings "'is treated much like a Rule 12(b)(6) motion to dismiss.'" Villeneuve v. Avon Prods., Inc., 919 F.3d 40, 43 n.2 (1st Cir. 2019) (quoting Perez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008)); see Jardín De Las Catalinas Ltd. P'ship v. Joyner, 766 F.3d 127, 132 (1st Cir. 2014) ("applicable standard

4

of review" under Rule 12(c) motion "is identical to the standard of review for motions to dismiss for failure to state a claim under Rule 12(b)(6)"). "'[T]he well-pleaded facts and the reasonable inferences therefrom'" in the complaint are viewed "'in the light most favorable to the nonmovant (here, the plaintiff).'" Doe v. Brown Univ., 896 F.3d 127, 130 (1st Cir. 2018) (citation omitted); AIG Prop. Cas. Co. v. Crosby, 892 F.3d 25, 27 (1st Cir. 2018). Judgment on the pleadings "is proper if-after accepting all well-pleaded facts as true and viewing them in the light most favorable to [the plaintiff]-the complaint fails to allege a plausible right to relief." Villeneuve, 896 F.3d at 130 (citations omitted).

## FACTUAL BACKGROUND

In seeking judgment on the pleadings, the clinical defendants incorporate by reference the factual background set out in the Report and Recommendation (Docket Entry # 74, pp. 9-20). (Docket Entry # 82, p. 2). The factual background summarizes the facts in the complaint, including the attached documents, and adheres to the scope of the record for a Rule 12(b)(6) motion.[2] (Docket Entry # 74, p. 9, n.4). The *same*

---

[2] This court had no occasion to consider documents outside the complaint that fall within certain narrow exceptions. See generally Newman v. Lehman Bros. Holdings Inc., 901 F.3d 19, 25 (1st Cir. 2018) (listing exceptions).

record applies to the Rule 12(c) motion.[3]  See Doe v. Brown Univ., 896 F.3d at 130 (court will affirm judgment on pleadings if "'complaint fails to state facts sufficient to establish'" plausible claim); accord Villeneuve, 896 F.3d at 130.

For efficiency and brevity, the factual background (Docket Entry # 74, pp. 9-20) is incorporated herein.  Familiarity with this record is assumed.

## DISCUSSION

### I. Conspiracy Claim

The clinical defendants move for judgment on the pleadings on the section 1983 conspiracy claim because the complaint does not plausibly allege a conspiratorial agreement.  (Docket Entry # 82, pp. 3-5).  They are correct.

To establish a section 1983 conspiracy claim, the plaintiff must prove "'a conspiratorial agreement'" and "'an actual abridgment of some federally-secured right.'"  Sánchez v. Foley, 972 F.3d 1, 11 (1st Cir. 2020) (quoting Nieves v. McSweeney, 241 F.3d 46, 53 (1st Cir. 2001)); accord Earle v. Benoit, 850 F.2d 836, 844 (1st Cir. 1988).  A section 1983 conspiratorial agreement is "'a combination of two or more persons acting in

---

[3] As with the previous Rule 12(b)6) motion, this court has no occasion to consider documents that fall within the same limited exceptions which apply to a Rule 12(c) motion.  See generally Curran v. Cousins, 509 F.3d 36, 44 (1st Cir. 2007).  Consideration of the answer does not alter the record in any meaningful way.

6

concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.'" Estate of Bennett v. Wainwright, 548 F.3d 155, 178 (1st Cir. 2008) (quoting Earle, 850 F.2d at 844) (additional citation omitted); accord Sánchez, 972 F.3d at 11 (quoting Bennett, 548 F.3d at 178). The First Circuit adheres to a similar definition of a conspiratorial agreement in the context of a conspiracy claim under 42 U.S.C. § 1985(3) ("section 1985(3)").[4] See Parker v. Landry, 935 F.3d 9, 17 (1st Cir. 2019) (quoting same language from Bennett, 548 F.3d at 178, in addressing section 1985(3) conspiracy claim).

As explained in the Report and Recommendation in the context of addressing the section 1985(3) conspiracy claim, "the complaint offers only 'vague and conclusory allegations of a conspiracy.'" (Docket Entry # 74, p. 45) (quoting Parker, 935 F.3d at 18). As to Collins and Pilings, the complaint alleges "cover up actions" and "non-thorough investigations." (Docket Entry # 1, ¶ 52). The clinical defendants also attended an administration meeting months before plaintiff's temporary

---

[4] A section 1985(3) conspiracy also requires a "conspiratorial purpose" of a racial or class-based animus behind the conspirators' actions. See Pérez-Sánchez v. Pub. Bldg. Auth., 531 F.3d 104, 107 (1st Cir. 2008).

7

transfer to MTC during which the attendees discussed a need to reduce overtime at OCCC by sending inmates under mental health watches to MTC. (Docket Entry # 1, ¶¶ 86, 161).

Mental health notes contemporaneous with the transfer to MTC reflect that plaintiff was open to placement on a mental health watch and sent to MTC under the above "overflow policy." (Docket Entry # 1-2, Ex. 3, 7, pp. 44, 69). During his temporary stay at MTC, plaintiff met with Andrea Cooper, MSW, LISWC ("Cooper"). According to Cooper, prior to plaintiff's transfer to MTC, Collins informed Cooper that plaintiff was on "a 15' Close-Contact" mental health watch and requesting a break from the OCCC "population to process his grief" stemming from the loss of his grandmother. (Docket Entry # 1-2, Ex. 7, p. 69). Thibault subsequently ordered Pilings to upgrade plaintiff "to [a] 1:1" mental health watch for transport to MTC. (Docket Entry # 1, ¶ 85) (Docket Entry # 1-2, Ex. 7, p. 70). These and other circumstances set out in the factual background are devoid of any reasonable inference that Collins and/or Pilings combined to act in concert with each other and/or Holmes to commit an unlawful act "'the principal element of which is an agreement . . . to inflict a wrong'" or an injury on plaintiff. Sánchez, 972 F.3d at 11 (quoting Bennett, 548 F.3d at 178).

Accordingly, as stated in the Report and Recommendation in applying the similar definition of a section 1985(3) conspiracy,

8

"the complaint does not show that the clinical defendants had an agreement to transfer or a goal to transfer plaintiff to MTC and inflict a wrong or injury on plaintiff." (Docket Entry # 74, p. 46). The complaint also fails to "give rise to a reasonable inference that Holmes, Collins, or Pilings had an agreement to engage in a cover-up and inflict a wrong or injury on plaintiff." (Docket Entry # 74, p. 46). These findings apply equally to the section 1983 conspiracy claim and render implausible a conspiratorial agreement among the clinical defendants. The section 1983 conspiracy claim is therefore subject to dismissal.

## II.  Equal Protection Claim

The clinical defendants move to dismiss the equal protection claim in Count One for the same reasons this court recommended dismissing the equal protection claim against the DOC defendants. (Docket Entry # 82, pp. 5-6). Specifically, the clinical defendants maintain that the transfer of a prisoner to MTC based on a mental illness is subject to rational basis review. Tracking this court's findings, they submit the temporary transfer to accommodate OCCC overflow satisfies rational basis review. (Docket Entry # 82, pp. 5-6). Again, they are correct.

The complaint alleges discrimination based on plaintiff's mental illness. In particular, the complaint states that

9

"plaintiff was the first and only person" transferred to MTC "without being a person adjudicated for that type of transfer." (Docket Entry # 1, ¶ 126). The complaint describes the MTC transfer as occurring under the "overflow policy" discussed at the meeting months prior to plaintiff's transfer. (Docket Entry # 1-2, p. 69) (Docket Entry # 1, ¶ 86).

A classification or law that "neither abridges a fundamental right nor operates against a suspect class receives rational basis review when it is challenged under the Equal Protection Clause." Inmates of Suffolk County Jail v. Rouse, 129 F.3d 649, 660 (1st Cir. 1997) (citing Heller v. Doe, 509 U.S. 312, 318-19 (1993)); Dickinson v. Chitwood, No. 98-1446, 1998 WL 1085684, at *2 (1st Cir. Dec. 17, 1998) ("[c]lassification that neither abridges a fundamental right nor operates against a suspect class receives rational basis review") (citation omitted) (unpublished). The complaint provides no indication that the temporary transfer to accommodate overflow and curb overtime was in retaliation for plaintiff's exercise of a fundamental right. See generally McDonald v. Hall, 610 F.2d 16 (1st Cir. 1979).

As stated in the Report and Recommendation (Docket Entry # 74, p. 60), prisoners are not "a suspect class for purposes of equal protection claims." Sepulveda v. UMass Corr. Health Care, 160 F. Supp. 3d 371, 389-90 (D. Mass. 2016) (citing Boivin v.

10

Black, 225 F.3d 36, 42 (1st Cir. 2000)). Likewise, "[t]he disabled are not a suspect class for equal protection purposes." Toledo v. Sánchez, 454 F.3d 24, 33 (1st Cir. 2006). "Sexual offenders are" also "not a suspect, or quasi-suspect class, so as to entitle a sex offender to heightened scrutiny of prison officials' allegedly discriminatory acts under the equal protection clause." Cremeans v. Wrenn, No. 17-cv-572-SM, 2019 WL 1406563, at *8 (D.N.H. Mar. 28, 2019).

As reasoned in the Report and Recommendation (Docket Entry # 74, p. 60), a "rational basis test" therefore applies. See Boivin, 225 F.3d at 43-44. Rational basis review "ask[s] whether 'there is a rational relationship between the disparity of treatment and some legitimate governmental purpose.'" Id. (quoting Heller, 509 U.S. at 320). The classification survives review if there is "'any reasonably conceivable state of facts that could provide a rational basis for the classification.'" Id. at 44 (citation omitted); see Czekalski v. New Hampshire Dep't of Corr., No. 19-cv-121-LM, 2020 WL 1640191, at *3 (D.N.H. Apr. 2, 2020).

The transfer to MTC to curb overtime at OCCC by sending inmates under mental health watches to MTC (Docket Entry # 1, ¶ 86) survives rational basis review. In addition, and as noted in the Report and Recommendation, the statement in the complaint "that Pilings' explanation of insufficient time to conduct a

11

meeting before the transfer 'is completely false'[5] does not sufficiently detract from the rational basis to treat plaintiff differently by transferring him to MTC to accommodate overflow even though he was not a convicted sex offender." (Docket Entry # 74, p. 61). Because the temporary transfer to alleviate overflow and curb overtime constitutes a rational basis for the different treatment, the equal protection claim is subject to a Rule 12(c) judgment on the pleadings.

III. Substantive Due Process Claim

The clinical defendants next argue that the absence of a liberty interest requires judgment on the pleadings on the section 1983 and Massachusetts Declaration of Rights substantive due process claims. In their prior motion to dismiss, they addressed the absence of a liberty interest only as to the procedural due process claim. (Docket Entry # 35, pp. 5-7). They did not move to dismiss the substantive due process claim based on the absence of a liberty interest. (Docket Entry # 35, pp. 5-7) (Docket Entry # 74, pp. 26-27) (Docket Entry # 74, p. 29, n.17). With respect to the section 1983 procedural due process claim against the clinical defendants in Count One, this

---

[5] Plaintiff was handcuffed and taken to OCCC intake "at approximately 3:30" p.m. on October 17, 2018, when the process to transfer him to MTC began, and "the Administration did not leave until 4 or 5 o'clock that afternoon." (Docket Entry 1, ¶¶ 28, 85-86).

12

court concluded plaintiff lacked a liberty interest and recommended dismissing the claim, which the district judge adopted. (Docket Entry # 74, pp. 29, 84) (Docket Entry # 78, p. 4). As to the section 1983 substantive due process claim against the DOC defendants in Count One, this court also reasoned there was an absence of a liberty interest. (Docket Entry # 74, pp. 57-58). Accordingly, this court recommended allowing the DOC defendants' motion to dismiss the substantive due process claim in Count One, which the district judge adopted. (Docket Entry # 74, p. 84) (Docket Entry # 78, p. 4). The section 1983 and Massachusetts Declaration of Rights substantive due process claims allege that the transfer to MTC and the labeling and verbal harassment of plaintiff as a sex offender was "a substantial departure from" accepted professional standards and led to placing plaintiff in harm's way and failing to protect him from the inmate assault. (Docket Entry # 1, ¶¶ 87-91, 93, 95, 97, 99, 120, 127-128, 130, 174, 179-182) (Docket Entry # 74, p. 28).

The substantive component of the Fifth Amendment's Due Process Clause "bars certain offensive government actions 'regardless of the fairness of the procedures used to implement them.'" Aguilar v. U.S. Immigration and Customs Enforcement Div. of Dept. of Homeland Sec., 510 F.3d 1, 21 (1st Cir. 2007) (citation omitted); accord González-Fuentes v. Molina, 607 F.3d

864, 880 (1st Cir. 2010). A substantive due process claim challenges "the constitutionality of the deprivation itself." González-Fuentes, 607 F.3d at 880. Where, as here, the challenge concerns executive action, "the threshold question . . . is 'whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience.'"[6] Id.

Importantly, even if executive action "does shock the conscience," it "will still not infringe substantive due process unless it also deprives an individual of a 'protected interest in life, liberty, or property.'" Id. at 880 n.13 (citation omitted). Moreover, "'[t]he interests protected by substantive due process are . . . much narrower than those protected by procedural due process.'" Id. (citation omitted). Interests protected under substantive due process only "implicate one of 'those fundamental rights and liberties which are, objectively, deeply rooted in this Nation's history and tradition and implicit in the concept of ordered liberty, such that neither liberty nor justice would exist if they were sacrificed.'" Id. (citation omitted). For example, an inmate's "loss of an

---

[6] The standard for evaluating "substantive due process claims under the Massachusetts Declaration of Rights mirrors the federal standard for the parallel constitutional claims." Hinds v. Pepe, No. 15-cv-10073-LTS, 2016 WL 1643742, at *2 (D. Mass. Apr. 25, 2016).

14

opportunity for conditional release before his sentence maximum date, because of a delay in admitting him to [a] sex offender treatment program," falls short of a protected interest in life, liberty, or property. Ramos v. NH Dept. of Corr., Comm'r, No. 15-1261-JD, 2015 WL 6554564, at *2 (D.N.H. Oct. 29, 2015). Massachusetts regulations "regarding classification and transfer do not expressly create a liberty interest." Riley v. O'Brien, No. 16-11064-LTS, 2016 WL 8679258, at *7 (D. Mass. Sept. 2, 2016). Nor do they give rise to a "'protected interest in life, liberty, or property'" with respect to a substantive due process claim. González-Fuentes, 607 F.3d at 880 n.13.

Here, plaintiff was not plausibly deprived of "a 'protected interest in life, liberty, or property.'" Id. (citation omitted). The labeling of plaintiff as a sex offender by virtue of his temporary transfer to MTC and the resulting harassment and assault unaccompanied by any deeply rooted fundamental right or liberty falls significantly short of a protected interest. Dismissal of the section 1983 and Massachusetts Declaration of Rights substantive due process claims is appropriate.

CONCLUSION

15

To the extent set forth in the foregoing discussion, this court **RECOMMENDS**[7] that the clinical defendants' motion for judgment on the pleadings (Docket Entry # 81) be **ALLOWED**.

                                              /s/ Marianne B. Bowler
                                              **MARIANNE B. BOWLER**
                                              United States Magistrate Judge

---

[7] Any objections to this Report and Recommendation must be filed with the Clerk of Court within 14 days of receipt of the Report and Recommendation to which objection is made and the basis for such objection. Any party may respond to another party's objections within 14 days after service of the objections. Failure to file objections within the specified time waives the right to appeal the order.